**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

LEE ALEXANDER BROWN,

        Plaintiff,

        v.                                               Case No. 10-CV-1089

DONNA HEDRICH,

        Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 27), DENYING PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF AND/OR MOTION FOR TEMPORARY RESTRAINING ORDER (DOC. 36), GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SUR-REPLY (DOC. 41), DENYING PLAINTIFF'S MOTION FOR INJUNCTION (DOC. 42), DENYING AS MOOT PLAINTIFF'S MOTION TO EXPEDITE PROCEEDINGS (DOC. 43) AND DISMISSING CASE

Plaintiff, Lee Alexander Brown, who is confined at the Sand Ridge Secure Treatment Center (SRSTC) under a civil commitment as a sexually violent person, *see* Wis. Stat. ch. 980, filed this pro se civil rights action under 42 U.S.C. § 1983. He is proceeding in forma pauperis on a First Amendment claim based on alleged interference with his legal mail and denial of his patient rights under Wis. Stats. § 1.61. Defendant, Donna Hedrich, who is a employed by the Wisconsin Department of Health Services as a Social Worker-Senior at SRSTC, has filed a motion for summary judgment, which will be addressed herein.

SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTS[1]

Plaintiff was confined at SRSTC at all times relevant. Defendant, the social worker assigned to plaintiff's housing unit, was employed at SRSTC at all relevant times.

SRSTC encourages written communication between patients and others that will foster positive relationships and treatment progress, motives, and actions while at SRSTC. Use of the mail will assist the patients in successful reintegration into the community and

---

[1] This section is taken from Defendants' Proposed Findings of Fact and plaintiff's sworn complaint, *see Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

help them maintain family ties.  At the same time, mail coming into SRSTC carries the risk of introducing contraband which could deteriorate the safety and therapeutic environment of SRSTC.  SRSTC must take appropriate actions to prevent the introduction of contraband through the mail, while processing the mail in the most expeditious and confidential manner possible.

Patients at SRSTC are allowed to send and receive sealed mail.  The processing and delivery of patient mail is set forth in Policy # SR118, Processing and Delivery of Patient Mail.  The purpose of Policy # SR118 is to ensure that incoming and outgoing patient mail is processed and delivered to patients in a timely, accurate, and secure manner.

Policy # SR118 defines non-exempt mail as correspondence, packages, or other items received through the mail or other delivery services addressed to a patient which cannot be readily identified from the outside address label as being sent by federal, state, county, or municipal government agency; a federal, state, county, or local court; a law firm; a federal, state, or local elected official; or a physician or psychologist.  According to Policy # SR118, all non-exempt mail is opened, examined for contraband, and delivered to the patient by SRSTC staff.  Non-exempt mail is not read by staff, unless there is reason to believe the mail could pose a threat to security of the facility or seriously interfere with the treatment, rights, or safety of others.

Exempt mail is correspondence, packages, or other items received through the mail or other delivery services addressed to a patient which can be readily identified from the outside address label as being sent by any federal, state, county, or municipal government agency; a federal, state, county, or local court; a law firm; a federal, state, or local elected

official; or a physician or psychologist. Exempt mail may not be opened for inspection or read by staff and shall be inspected for contraband by having the patient open the mail in the staff member's presence. Staff will direct the patient to remove the contents of the envelope and show the envelope and contents, page by page, so that staff can inspect the items. If the correspondence contains contraband or if the patient refuses to show the contents of the envelope, the correspondence is confiscated. Staff do not read exempt mail, but they review the mail only to the extent to ensure that the mail is in fact from any federal, state, county, or municipal government agency; a federal, state, county, or local court; a law firm; a federal, state, or local elected official; or a physician or psychologist.

All outgoing patient mail is to be placed in the housing unit mailbox. A third shift staff member collects and sorts all outgoing mail and delivers it to the mailroom for processing.

SRSTC implemented Policy # SR359, Indigent Patient Cash Allowances, which provides patients with access to funds when there are no other financial means available. This allowance is designed to help increase autonomy, personal responsibility, and supports the attainment of treatment goals. Indigent patients at SRSTC are offered employment opportunities in lieu of indigence payments, or "free money," if they are capable of being employed. Such employment opportunities provide the patient with income equal to or greater than the indigence payments they would otherwise receive. Indigent patients who are capable, yet refuse to work, will not receive indigence payments, or "free money." Periodically, SRSTC re-offers employment opportunities to patients who have refused work in the past.

SRSTC implemented Policy # SR649, Legal Access, which provides reasonable legal access for patients who demonstrate a financial need. According to Policy # SR 649, the patient must send a completed Patient Request form to the Unit Social Worker outlining needs and provide documentation for review. The Social Worker is responsible for determining if the patient has a legitimate legal need.

Patients are provided with a payment option to fulfill their unpaid financial obligations to the institution in accordance with SRSTC implemented Policy # SR648, Unpaid Obligations – Patient. This policy is designed to offer a consistent payment plan to all patients and insures the repayment of patient debt.

Plaintiff was determined to demonstrate a financial need related to monies for legal access. However, he is not eligible for an indigence allowance, or "free money," because he is capable, but refuses to work when offered an institution job. Given his status, plaintiff is entitled to the following on a weekly basis, subject to Policy # SR649 and a Client Rights Grievance Resolution Process Stage 3 Decision dated May 6, 2010:

> (a) legal calls can be unlimited in number but are restricted to attorneys that have been previously contacted and agreed to have contact with plaintiff; (b) two stamped #10 envelopes for legal mail or equivalent postage costs - patients are responsible for additional postage costs; (c) writing materials for legal correspondence consisting of ten pieces of paper and one pen; (d) twenty-five single-sided legal photocopies per week - patients are responsible for additional copying costs; (e) any unused portions for each week will not be available for future use and cannot be accrued.

(Hedrich Aff. ¶ 20, Ex. 1004.)

On November 11, 2010, plaintiff submitted three disbursement requests to defendant by which he sought to send out legal mail at institution expense, pursuant to Policy # SR649. The disbursement requests indicated that the mail was to be addressed

to: (1) the privacy officer of the Department of Health and Human Services regarding a HIPAA complaint; (2) Dane County Circuit Court Chief Judge William Foust regarding Case Number 10GF003002; and (3) Disability Rights of Wisconsin. (Compl., Exs. 1-3.)

Plaintiff had already been approved to receive subsidized legal supplies and stamped envelopes and thus, was forwarding these materials to defendant to verify them as "legal mail" so that he could then seal them and place them in the locked unit mailbox. Under Policy # SR649, the Social Worker is required to "verify the legal documents" as legal in nature and place them in the envelope. (Hedrich Aff. ¶ 16, Ex. 1002 at 2(3)(B).) This process ensures that indigent patients do not attempt to manipulate the system and attempt to pass off just any correspondence as subsidized "legal mail." The patient is then allowed to place the envelopes in the unit's mailbox under supervision. Defendant always verifies plaintiff's (and any other indigent patient's) legal mail by scanning it in their presence; she would never scan any identified outgoing or incoming legal mail outside of the patient's presence.

Defendant responded to all three of the Disbursement Requests on November 11, 2010, and denied the requests for postage because plaintiff had stapled the envelopes shut, thereby prohibiting her from confirming that the outgoing mail was legal in nature. It was defendant's intent to scan the mail sent with the three Disbursement Requests dated November 11, 2010, only to the extent necessary to verify that the mail was legal in nature, and to do so in plaintiff's presence.

Plaintiff failed to follow the rules outlined in Policy # SR649, and therefore, was not allowed to send out legal mail on November 11, 2010. However, plaintiff could have re-submitted the three Disbursement Requests for defendant's consideration by following the

rules set forth in Policy # SR649 and allowing defendant to verify that the mail was legal in nature, but failed to do so.

If a patient has a request, he must submit his request on a Patient Request form to the housing unit staff. All Patient Request forms are forwarded to the Psychiatric Care Supervisor, who responds to the patient's query or forwards the request to a different department or staff for an appropriate response. Plaintiff submitted a Patient Request dated November 11, 2010. On the same day, Eric Swaitly, the Psychiatric Care Supervisor assigned to plaintiff's housing unit, reviewed the Patient Request form and determined to not approve the request for a response from the Director. In this instance, plaintiff had completely filled the entire Patient Request form with his comments and there was no space for a response or decision to be written by the Director or other staff.

ANALYSIS

A. Summary Judgment Submissions

Defendant contends that, (1) she is entitled to judgment as a matter of law on plaintiff's First Amendment mail claim because the confidentiality of his mail was not protected by the First Amendment, and because SRSTC's mail policy for indigent patients is reasonably related to legitimate institutional interests; (2) she is entitled to qualified immunity; and (3) the court should decline to exercise supplemental jurisdiction over plaintiff's state law claim.

In response to defendant's motion for summary judgment, plaintiff submitted a brief titled "motion in opposition" along with nine "opposing contentions." This brief and

opposing contentions address issues that, for the most part, are irrelevant to his claim.[2] For example, plaintiff discusses the nature of his Chapter 980 commitment and the voluntariness of his treatment at SRSTC. He also challenges incoming mail policies at SRSTC, staff's ability to collect mail on behalf of patients, and the overall conditions of his commitment. In addition, plaintiff contends that defendant has denied him access to the courts, an issue this court has barred him from pursuing. *See* Screening Order of April 4, 2011, at 4.

Defendant's reply reiterates that she is entitled to summary judgment. Defendant also states that issues raised in plaintiff's opposition contentions are irrelevant to plaintiff's First Amendment claim and do not respond to her summary judgment motion.

Plaintiff filed a sur-reply objecting to defendant's characterization of his reply. He did not file any evidentiary material along with his sur-reply. However, as stated by defendant in her motion to strike the sur-reply, plaintiff's sur-reply is not authorized under the Federal Rules of Civil Procedure or the Local Rules and he did not seek leave to file it. *See* Fed. R. Civ. P. 56; Civil L. R. 7(I) (E.D. Wis.). Thus, it will not be considered.

---

[2] Plaintiff's opposing contentions state as follows: (1) unauthorized placement and forced "Sand Ridge Treatment Status;" (2) forced labor based on Sand Ridge treatment program; (3) denial and limitations to legal access based on Sand Ridge Treatment Program and Policies; (4) censorship of outgoing and incoming legal mail based on Sand Ridge arbitrary treatment policies; (5) denial and limitations on outgoing legal mail based on Sand Ridge treatment policies; (6) denial of indigent benefits based on plaintiff's refusal to sign consent to the Sand Ridge therapeutic work program, which is a component of the Sand Ridge SVP Treatment Program that also requires consent; (7) theft and exploitation by charging and then confiscating half or more than half of any and all funds plaintiff would get, based on Policy # SR648, a treatment policy that is applied to indigent "treatment patients" who either refuse, lose, or quit their therapeutic work program and therefore, rendering them "not indigent" as a status, including for legal access purposes; (8) constitutional entitlement as a civil detainee; and (9) defendant's distorted and inconsistent stated facts.

B.	First Amendment Claim

Inmates and detainees have protected First Amendment interests in sending and receiving mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Although detainees have a First Amendment right to send and receive mail, that right does not preclude officials from examining mail to ensure that it does not contain contraband. *Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974); *Rowe*, 196 F.3d at 782; *see also Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (sporadic and short-term delays in receiving mail do not constitute a First Amendment violation).

The inspection of personal mail for contraband is a legitimate prison practice, justified by the important governmental interest in prison security. *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986). Further interference with an inmate's personal mail must be reasonably related to legitimate prison interests in security and order. *Turner v. Safley*, 482 U.S. 78, 89 (1987). In *Turner*, the Supreme Court identified the following four factors as helpful in determining whether a prison regulation abridging First Amendment rights is reasonably related to a legitimate prison interest: 1) a "valid, rational connection" between the regulation and a legitimate, neutral government interest; 2) the existence of alternative methods for the inmate to exercise his constitutional right; 3) the effect the inmate's assertion of that right will have on the operation of the prison; and 4) the absence of an alternative method to satisfy the government's legitimate interest. *Id.* at 89-90.

It is well established that prisoners have a First Amendment right to be free from certain interference with their "legal" mail. *Wolff*, 418 U.S. at 577; *see also Turner*, 482

U.S. at 84; *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005). Therefore, prison officials may only inspect, not read, certain types of legal mail in the presence of the inmate. *Wolff*, 418 U.S. at 577; *Bach v. People of State of Ill.*, 504 F.2d 1100, 1102 (7th Cir. 1974). For example, correspondence between an inmate and an attorney is deemed confidential and, therefore, must be opened in the presence of the inmate. *Wolff*, 418 U.S. at 577. Repeated instances of a prisoner's legal mail being opened by prison officials outside of his presence are actionable. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996) (allegations that legal mail was opened repeatedly and sometimes stolen stated First Amendment claim); *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 307 (7th Cir. 1993) (assertions that two letters addressed to the plaintiff from the United States District Court and one from the Department of Justice which was marked "LEGAL MAIL-OPEN IN PRESENCE OF INMATE," were opened outside the presence of the plaintiff were not legally or factually frivolous).

In this case, it is undisputed that plaintiff sought to mail three documents under SRSTC's Policy # SR649, which provides reasonable legal access for patients who demonstrate a financial need. To mail documents under Policy # SR649, plaintiff was required to submit the mail unsealed and then defendant would "scan" the mail in his presence to verify that it was indeed exempt mail. However, plaintiff failed to submit his mail unsealed and, therefore, defendant refused to process it.

As an initial matter, plaintiff's claim in this case centers on the three pieces of outgoing mail defendant declined to process on November 11, 2010. Defendant refused to mail the documents because plaintiff sealed the envelopes, contrary to Policy # SR649. The extra precaution afforded legal mail is reserved generally for privileged

10

correspondence between inmates and their attorneys. *Wolff*, 418 U.S. at 574; *Antonelli*, 81 F.3d at 1432; *see also Guajardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2011) (most communications between courts and agencies, and prisoners are public documents, although some are sensitive). Here, plaintiff's three pieces of mail were not privileged communication to an attorney and therefore, it does not appear they would be subject to the extra protection afforded privileged correspondence.

Moreover, even if plaintiff's correspondence were determined to be legal mail, defendant scans all patients' legal mail, including plaintiff's, in their presence. While scanning, or glancing at an inmate's legal mail to determine whether it is what it is purported to be, is an imperfect process, institution security makes it a necessary one. *See Guajardo-Palma*, 622 F.3d at 805. Finally, Policy # SR649 requires the Social Worker to verify the legal documents to ensure that indigent patients do not attempt to advantage themselves in the system or attempt to submit a non-urgent correspondence as subsidized legal mail. This additional purpose qualifies as a legitimate penological interest. *See Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011); *see also United States v. Whalen*, 940 F.2d 1027, 1035 (7th Cir. 1991) (reviewing outgoing mail justified if done to ensure mail did not interfere with orderly running of prison, contained no threats, and did not facilitate criminal activity).

C.     State Law Claim

Defendant maintains that the court should decline to exercise supplemental jurisdiction over plaintiff's state law claim. Although the Screening Order failed to state whether plaintiff was allowed to proceed on his state law claim under Wis. Stat. § 51.61,

because there is no surviving federal claims, this court declines to exercise supplemental jurisdiction over that. *See* 28 U.S.C. § 1367(c); *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009); *Sharp Elec. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514-15 (7th Cir. 2009).

ADDITIONAL MATTERS

On February 15, 2012, plaintiff filed a motion for injunctive relief. He seeks an order, (1) preventing SRSTC mail delivery staff from tampering with his incoming and outgoing legal mail; (2) directing the Clerk of Court to provide a copy of response to defendant's motion for summary judgment; (3) preventing SRSTC from enforcing its Legal Access Policy; (4) ordering SRSTC to stop charging him for legal supplies; (5) ordering SRSTC staff to afford him indigency status notwithstanding his refusal to work; (6) ordering SRSTC staff to return monies collected from his account for his legal supplies; and (7) ordering SRSTC to transfer him to another mental health facility. Plaintiff filed another motion for injunctive relief on May 1, 2012. This motion seeks an order enjoining the administration of SRSTC for the purpose of a preliminary determination of injunctive relief. Plaintiff asserts that his prior requests for injunctive relief have shown a systematic and arbitrary denial of his rights regarding his privileged outgoing legal mail. However, judgment in defendant's favor on her motion for summary judgment moots this request. *See Goodman v. Ill. Dep't of Fin. and Prof'l Reg.*, 430 F.3d 432, 437 (7th Cir. 2005).

Finally, on May 1, 2012, plaintiff filed a motion to expedite a decision in this case which has been resolved as discussed above. Therefore,

IT IS ORDERED that defendant's motion for summary judgment (Doc. 27) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for injunctive relief and/or motion for temporary restraining order (Doc. 36) is DENIED.

IT IS FURTHER ORDERED that defendant's motion to strike plaintiff's sur-reply (Doc. 41) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for injunction (Doc. 42) is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion to expedite proceedings (Doc. 43) is DENIED AS MOOT.

IT IS FURTHER ORDERED that this case be dismissed.

Dated at Milwaukee, Wisconsin, this 31st day of May, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
Chief U.S. District Judge